UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RICHARD HARRIS,

              Plaintiff,

v.                                  Case No. 3:23-cv-315-MMH-PDB

FLORIDA DEPARTMENT OF
CORRECTIONS, et al.,

              Defendants.

_____

## ORDER

### I. Status

Plaintiff Richard Harris, an inmate in the custody of the Florida Department of Corrections (FDC), initiated this action on March 15, 2023,[1] by filing a Complaint for Violation of Civil Rights (Complaint; Doc. 1)[2] with exhibits (Doc. 1-1). In the Complaint, he names three Defendants: (1) the FDC, (2) Warden Lane, and (3) Chaplain W. Wood. See Complaint at 2–3. Harris alleges that Defendants prevented him and other Hebrew Israelite inmates from attending religious services, adhering to dietary restrictions on holy days, and wearing religious headgear. See id. at 6–7. He raises claims under the

_____

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

[2] For all pleadings and documents filed in this case, the Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

First and Fourteenth Amendments, as well as the Religious Land Use and Institutionalized Persons Act (RLUIPA). See id. at 4.

This matter is before the Court on Defendants' Motion to Dismiss. See Motion to Dismiss (Motion; Doc. 15). Harris filed a response in opposition to the Motion. See Plaintiff's Response to Defendants['] Motion to Dismiss Memorandum of Law Incorporated (Response; Doc. 16). Thus, the Motion is ripe for review.

## II. Harris's Allegations[3]

Harris asserts that Defendants violated his right to freely practice his religion when they: (1) prevented him from attending Hebrew Israelite services, (2) refused to accommodate his religious dietary restrictions on holy days, and (3) restricted Hebrew Israelite inmates from wearing religious diadems. See Complaint at 6–7. As to the first alleged violation, Harris explains that Suwannee Correctional Institution (Suwannee CI) is a controlled movement institution. Id. at 6. He alleges that if an inmate needs to move around the compound, he must report to an officer at movement control. Id. That officer will "check the day's call-out, and then call the tower and have

---

[3] In considering Defendants' Motion, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to Harris, and accept all reasonable inferences that can be drawn from such allegations. Holland v. Carnival Corp., 50 F.4th 1088, 1093 (11th Cir. 2022). As such, the facts recited here are drawn from the Complaint, and may well differ from those that ultimately can be proved.

them [] unlock the gate needed for inmate's passage." Id. Harris asserts that one of the two weekly services for Hebrew Israelite inmates is scheduled from 1:30 p.m. to 3:00 p.m.; however, Officer Allen at movement control would not allow Harris and other Hebrew Israelite inmates "to go to their service until after the feeding of the entire institution [for the lunch meal] was complete at 2:30–45 p.m.; even if the inmates were not eating the noon meal." Id.

Harris further complains that Defendants have prevented him from observing dietary restrictions on holy days. Id. According to Harris, it "is up to the chaplin [sic] and or Senior Chaplin [sic] to ensure[] the food service staff know the dates of the High Holy Days (Passover, Feast of Unleavened Bread, etc.) and the dietary requirements of the inmates of that religion." Id. He contends that "[e]verytime a High Holy day (that) involved dietary restriction/law came around, there was always an issue and or some reason for the staff, chaplin [sic] and or security to not allow the Biblical law not [sic] to be followed." Id. In particular, Harris alleges that on April 2, 2022, he was denied a meal during a holy day. Id.; see also Doc. 1-1 at 3. Harris asserts that he submitted a formal grievance regarding the issue, which Warden Lane approved. Complaint at 6.

Lastly, Harris contends that Defendants do not allow Hebrew Israelite inmates to wear diadems pursuant to "the Nation of Yaweh's [sic] religious beliefs and practices." Id. at 7. According to Harris, when he grieved the issue,

3

Chaplain Wood responded that diadems constitute a security risk. Id. at 6. Harris asserts that "[w]hen evidence to refute the security risk was presented[,] it became a[n] only during religious services attended by a sponsor restriction." Id. However, the Hebrew Israelite inmates at Suwannee CI "have no civilian sponsors[] who attend [their] religious services." Id. at 7. Harris contends that other religious groups at Suwannee CI do not have such restrictions on headgear. Id. at 6.

### III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262–63 (11th Cir. 2004). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly,

4

550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (quotations, citation, and original alteration omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give a court license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in

order to sustain an action.'" Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168–69 (11th Cir. 2014) (quoting GJR Invs., Inc. v. Cnty. of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998), overruled in part on other grounds as recognized in Randall, 610 F.3d at 709).

## IV. Summary of Defendants' Arguments

In their Motion, Defendants ask the Court to dismiss the claims against them because: (1) Harris failed to exhaust his administrative remedies; (2) they are entitled to Eleventh Amendment immunity; (3) Warden Lane and Chaplain Wood, as supervisory officials, are not liable under 42 U.S.C. § 1983; (4) Warden Lane and Chaplain Wood are entitled to qualified immunity; and (5) Harris is not entitled to monetary damages or injunctive relief. See generally Motion.

## V. Analysis

### A. Exhaustion of Administrative Remedies

### 1. Prison Litigation Reform Act (PLRA) Exhaustion

The Eleventh Circuit Court of Appeals has held the exhaustion of administrative remedies by a prisoner is "a threshold matter" to be addressed before considering the merits of a case. Chandler v. Crosby, 379 F.3d 1278, 1286 (11th Cir. 2004); see also Myles v. Miami-Dade Cnty. Corr. & Rehab.

<u>Dep't</u>, 476 F. App'x 364, 366 (11th Cir. 2012)[4] (noting that exhaustion is "a 'threshold matter' that we address before considering the merits of the case") (citation omitted). It is well settled that the PLRA requires an inmate wishing to challenge prison conditions to first exhaust all available administrative remedies before asserting any claim under 42 U.S.C. § 1983. <u>See</u> 42 U.S.C. § 1997e(a); <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002). A prisoner such as Harris, however, is not required to plead exhaustion. <u>See</u> <u>Jones v. Bock</u>, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" <u>Id.</u> Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. <u>Bryant v. Rich</u>, 530 F.3d 1368, 1374 (11th Cir. 2008). Not only is there an exhaustion requirement, the PLRA "requires proper exhaustion." <u>Woodford v. Ngo</u>, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of

---

[4] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. <u>See</u> <u>McNamara v. GEICO</u>, 30 F.4th 1055, 1060–61 (11th Cir. 2022); <u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

> administrative remedies, which "means using all steps
> that the agency holds out, and doing so <u>properly</u> (so
> that the agency addresses the issues on the merits)."
> <u>Pozo</u>,[5] 286 F.3d, at 1024 (emphasis in original).

<u>Woodford</u>, 548 U.S. at 90. And, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." <u>Id.</u>

The United States Supreme Court has instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" <u>Ross v. Blake</u>, 578 U.S. 632, 648 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" <u>Turner v. Burnside</u>, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting <u>Goebert v. Lee Cnty.</u>, 510 F.3d 1312, 1322–23 (11th Cir. 2007)).

Because failure to exhaust administrative remedies is an affirmative defense, Defendants bear "the burden of proving that [Harris] has failed to exhaust his available administrative remedies." <u>Id.</u> at 1082. In accordance with Eleventh Circuit precedent, a court must employ a two-step process when examining the issue of exhaustion of administrative remedies.

---

[5] <u>Pozo v. McCaughtry</u>, 286 F.3d 1022 (7th Cir. 2002).

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. See Turner, 541 F.3d at 1081. In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082–83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015).

At step two of the procedure established in Turner, the Court can consider facts outside the pleadings as long as those facts do not decide the case and the parties have had sufficient opportunity to develop the record.[6] Bryant, 530 F.3d at 1376; see also Jenkins v. Sloan, 826 F. App'x 833, 838–39 (11th Cir. 2020).

---

[6] In an unpublished decision, the Eleventh Circuit suggests that a pro se plaintiff must receive notice of his opportunity to develop the record on exhaustion. See Kinard v. Fla. Dep't of Corr., No. 24-10359, 2024 WL 4785003, at *7 (11th Cir. Nov. 14, 2024) (per curiam). Here, the Court notified Harris that he had forty-five days to respond to any motion to dismiss. See Order (Doc. 5) at 3. Harris responded to the Defendants' Motion (Doc. 15) and addressed the exhaustion argument by relying on the grievance records that he attached to his Complaint. He does not suggest that he requires additional discovery. As such, Harris has received notice and an opportunity to develop the record on exhaustion.

In evaluating whether Harris has satisfied the exhaustion requirement, the Court notes that the Eleventh Circuit has determined that a "prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." Parzyck v. Prison Health Servs., Inc., 627 F.3d 1215, 1218 (11th Cir. 2010).

## 2. Florida's Prison Grievance Procedure

State law "determines what steps are required to exhaust." Dimanche v. Brown, 783 F.3d 1204, 1207 (11th Cir. 2015); see also Jones, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDC provides an internal grievance procedure for its inmates. See Fla. Admin. Code R. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process. First, an inmate must submit an informal grievance at the institutional level to a designated staff member responsible for the specific problem. See Fla. Admin. Code R. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. See Fla. Admin. Code R. 33-103.006. If the matter is not resolved through formal and informal grievances, the inmate must file an appeal to the Office of the FDC Secretary. See Fla. Admin. Code R. 33-103.007. However, under certain specified circumstances, an inmate can bypass the informal-grievance stage and start with a formal grievance at the

institutional level. <u>See</u> Fla. Admin. Code R. 33-103.005(1); 33-103.006(3). Or an inmate can completely bypass the institutional level and proceed directly to the Office of the FDC Secretary by filing a "direct grievance." <u>See</u> Fla. Admin. Code R. 33-103.007(3). Emergency grievances and grievances of reprisal are types of "direct grievances" that may be filed with the Office of the FDC Secretary. <u>See</u> Fla. Admin. Code R. 33-103.007(3)(a).

Florida Administrative Code Rule 33-103.011 provides time frames for the submission of grievances. Informal grievances must be received within twenty days from the date on which the grieved incident or action occurred. <u>See</u> Fla. Admin. Code R. 33-103.011(1)(a). Formal grievances must be received no later than fifteen days from the date of the response to the informal grievance. <u>See</u> Fla. Admin. Code R. 33-103.011(1)(b). Similarly, grievance appeals to the Office of the FDC Secretary must be received within fifteen days from the date that the response to the formal grievance is returned to the inmate. <u>See</u> Fla. Admin. Code R. 33-103.011(1)(c). According to Rule 33-103.014, an informal grievance, formal grievance, direct grievance, or grievance appeal "may be returned to the inmate without further processing if, following a review of the grievance, one or more . . . conditions are found to exist." Fla. Admin. Code R. 33-103.014(1). The rule provides an enumerated list as "the only reasons for returning a grievance without a response on the merits." <u>See</u> Fla. Admin. Code R. 33-103.014(1)(a)–(y). A grievance can be

returned without action if it: is untimely; "addresses more than one issue or complaint"; is "so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to"; is "not written legibly and cannot be clearly understood"; is a supplement to a previously-submitted grievance that has been accepted for review; does not "provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable"; or does not include the required attachments. See Fla. Admin. Code R. 33-103.014(1).

### 3. The Parties' Positions Regarding Exhaustion

Defendants argue that Harris failed to exhaust the administrative remedies for his claims regarding religious services and headgear. See Motion at 7. As to Harris's ability to attend religious services, Defendants assert that although Harris "has an approved grievance related to this issue, [it] remains unexhausted" because the issue as presented in the grievance "does not align with the allegations in his Complaint." Id. at 7–8. Defendants further contend that Harris failed to exhaust administrative remedies for his religious headgear claim because he filed neither a relevant grievance, nor a petition to initiate rulemaking. See id. at 8.

In support of their failure to exhaust assertions, Defendants submit declarations from Lawanda Sanders-Williams, FDC Operation Analyst; Teresa Barrs, Senior Clerk at Suwannee CI; and Lauren Sanchez, FDC Paralegal

Specialist. See id. at 28–35. In her declaration, Sanders-Williams states that between April 1, 2022, and March 15, 2023, Harris filed "no appeals of any kind regarding the prevention of practicing his religion as outlined in his complaint." Id. at 29. Further, "Harris filed no appeals that could be placed under the category of Religious Freedom or Religious Diet." Id.

In Barrs's declaration, she states that between April 1, 2022, and March 15, 2023, Harris had "one approved informal grievance related to Religious Freedom and CO Allen." Id. at 32. According to Barrs, Harris also had three denied informal grievances: two related to religious freedom and one related to religious diet. Id. "During that period, Inmate Harris filed one formal grievance, appealing the denied grievance related to religious diet. This formal grievance was approved." Id. at 33. Lastly, in her declaration, Sanchez states that Harris has no record of filing a petition to initiate rulemaking. Id. at 35.

In response, Harris contends that he exhausted available administrative remedies for all his claims. See Response at 5–6. He asserts that he submitted a formal grievance that "clearly state[d], in detail, how his religious freedom is being prohibited. Including [sic] his right to wear religious headgear/diadem." Id. at 5. Suwannee CI approved this formal grievance. Id. Additionally, Harris argues that a petition to initiate rulemaking is not a step required to exhaust administrative remedies. Id.

With his Complaint, Harris includes records of his exhaustion efforts.

See generally Doc. 1-1. The Court summarizes those records here. On April 2, 2022, Harris submitted an informal grievance (log #231-2204-0039) regarding the denial of meals on holy days. Doc. 1-1 at 3–4. Chaplain Wood returned the grievance. Id. at 3. Harris then submitted a formal grievance (log #2204-231-052), stating:

> This is an appeal to grievance #231-2204-0039. The response to my grievance was inadequate [and] my grievance should have been approved. I'm grieving the fact that the denial of my meal constituted me being prohibited the freedom to exercise my religious beliefs. It doesn't matter if it happened willfully or negligently, the fact remains it happened. Which is the first reason my grievance should've been approved. Secondly the response claims reason my grievance was returned without action, is because the directions for the Hebrew Israelite Passover [and] Religious Holy Holidays was communicated to food service. It wasn't communicated to [sic] well; cause me [and] the other Hebrew Israelites wouldn't have been denied breakfast meals without leaven (yeast). To further prove this response was inadequate [and] just a means to brush off me being denied the right to freely exercise my right to practice my religious belief without prohibition, is the fact that if it was communicated to the food service, the same thing would not have occurred against the last day of the feast of unleavened bread. No other religious denominations are having problems with the preparation of the meals for their Holy Days, or the denial of wearing head gear. The answer to my grievance is nothing more than an attempt to discourage me from seeking relief against my right to practice my religion without prohibition being violated [and] bigotry to the utmost. Due to the fact that Chaplain Woods [sic] does not expect me to take this violation of my Constitutional Rights past the F.D.O.C., he just basically brushed me off with a[n]

> inadequate response to my valid allegations [and]
> confirmed his deliberate indifference to the violation
> of my Constitutional [sic] Rights. Regardless of the
> information provided herein, I'm only grieving one
> issue; which is the denial of my Constitutional Right
> to freely exercise my religious beliefs without being
> prohibited, by the denying of my meal by F.D.O.C.
> staff on 4/2/22. A copy of grievance #231-2204-0039 is
> attached.

Id. at 5. A Suwannee CI official approved Harris's formal grievance:

> Investigation into your grievance reveals the
> following:
>
> You were [on] the list for the Hebrew Israelite
> Passover which began on April 02, 2022. You can
> consider this grievance approved due to you being on
> the list and not receiving your meal. You were also on
> the Passover list for April 16, 2022. The chaplain said
> he gave the list to foodservice of who the participants
> were for both. You have not been discriminated
> against. The list gets updated daily for transfers.

Id. at 6. Harris subsequently submitted an informal grievance (log #231-2204-0083) regarding the denial of meals on holy days and restrictions on religious headgear, which a Suwannee CI official returned. Id. at 7–8.

On April 11, 2022, Harris submitted another informal grievance (log #231-2204-0074):

> On 4/11/22, between the times of 11:30 a.m.–12:30
> a.m., as I was coming from my call-out at the law
> library [and] attempting to go too [sic] my call-out to
> the chapel to attend Hebrew Israelite service, Officer
> Allen told me to take my a[**] to the dorm. When I told
> him I'm on the call-out for Hebrew Israelite service, he
> said not today. His actions violate my First

> Amendment Right to freely exercise my religious beliefs without being prohibited. Being that I recently wrote a grievance on C.O. Allen for his excessive use of profane [and] abusive language; I feel this prohibiting of me freely practicing my religious belief was done in retaliation. This officer's actions violate sub-sections of the 33rd chapter of F.S. 944, as well as my first, eighth, [and] fourteenth amendment rights. Regardless of the information provided herein, I'm only grieving the one issue of being denied to freely exercise my religious beliefs without being prohibited.

Doc. 1-1 at 2. A Suwannee CI official approved the grievance: "Officer Allen was interviewed and advised that he has no knowledge of your accusations. All staff will be reminded to ensure all inmates make their callouts in a timely manner." Id.

### 4. **Turner** Step One

Under the first step of the Turner analysis, the Court must review the allegations in the Motion and Response and accept as true Harris's allegations. See Whatley, 802 F.3d at 1209. If Harris's allegations in the Response show a failure to exhaust, then dismissal would be appropriate. See id.

Accepting Harris's view of the facts as true, the Court finds dismissal of the claims against Defendants for lack of exhaustion is not warranted at the first step of Turner. Thus, the Court proceeds to the second step of the two-part process and considers Defendants' arguments about exhaustion and makes findings of fact.

16

### 5. <u>Turner</u> Step Two

As dismissal would not be appropriate based on the allegations in the Motion and Response, the Court next turns to the second prong of the <u>Turner</u> analysis. First, the Court finds that Defendants have failed to meet their burden of establishing that Harris did not properly exhaust administrative remedies for his claim about religious services. <u>See</u> <u>Turner</u>, 541 F.3d at 1082 ("The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies."). Indeed, Harris asserts in the relevant informal grievance (log #231-2204-0074) that Officer Allen prevented him from attending religious services and Officer Allen's actions denied him the right to freely exercise his religion. <u>See</u> Doc. 1-1 at 2. Although Harris's allegations in the informal grievance differ slightly from the allegations in his Complaint, the grievance is sufficient to put the FDC on notice of the issue in contention and to allow the FDC an opportunity to investigate the matter. <u>See</u> <u>Chandler</u>, 379 F.3d at 1287 (quotations and citation omitted) (alterations in original). Accordingly, Harris exhausted his administrative remedies for this claim.

However, as to Harris's claim about religious headgear, the Court finds that he failed to properly exhaust his available administrative remedies. To properly exhaust administrative remedies, "prisoners must complete the administrative review process in accordance with the [prison's] applicable

procedural rules." Jones, 549 U.S. at 218 (quotation marks omitted). The FDC's rules provide that informal and formal grievances must be legible, include accurately stated facts, and address only one issue or complaint; however, it does not include any requirements regarding the level of detail required for grievances. Fla. Admin. Code R. 33-103.005(2)(b)2; 33-103.006(2)(d)–(f). Where a prison's grievance procedure does not require a certain level of specificity, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002), overruled in part on other grounds by Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 (2007); see Harvard v. Inch, 411 F. Supp. 3d 1220, 1244 (N.D. Fla. 2019).

The approved formal grievance (log #2204-231-052) that Harris references in the Response did not sufficiently alert prison officials to his claim regarding religious headgear. Instead, the thrust of the grievance is the denial of meals on holy days. See Doc. 1-1 at 5 ("I'm grieving the fact that the denial of my meal constituted me being prohibited the freedom to exercise [his] religious beliefs."). Harris only briefly references his concern about the restriction on diadems. Id. ("No other religious denominations are having problems with the preparation of the meals for their Holy Days or the denial of wearing headgear."). Notably, the institutional response reflects that prison officials did not consider Harris's formal grievance to be a complaint about religious headgear, but rather understood it to be a grievance challenging the

denial of his meals. See id. at 6 ("You can consider this grievance approved due to you being on the list and not receiving your meal."). As such, the formal grievance did not suffice to alert officials to the religious headgear claim that Harris raises in the Complaint. See Chandler, 379 F.3d at 1287.

Harris's informal grievance (log #231-2204-0083) about religious headgear also was insufficient to exhaust his administrative remedies. Harris concedes that he did not appeal the denial of this informal grievance. See Complaint at 7. In failing to do so, he did not complete the requisite steps to exhaust as determined by state law. See Dimanche, 783 F.3d at 1211 (recognizing that the FDOC uses a three-step process for inmate grievances that includes an informal grievance, formal grievance, and appeal). To the extent Harris argues administrative remedies were unavailable to him because of threats from staff, the Court is not persuaded because his allegations are vague and conclusory. See Complaint at 7 ("[P]laintiff was threatened with physical abuse by staff if he continued seeking to exhaust administrative remedies on issues involving staff."); see also Turner, 541 F.3d at 1085 (holding that a prison official's threats of retaliation can render grievance process unavailable if: "(1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude" from participating in the process). Therefore, Harris's religious

headgear claim is due to be dismissed without prejudice for failure to exhaust.[7] However, his religious services claim is properly exhausted, and the Defendants' Motion is due to be denied in this regard.

## B. Eleventh Amendment Immunity

Defendants contend they are entitled to Eleventh Amendment immunity to the extent Harris seeks monetary damages against them in their official capacities. See Motion at 14–15. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. It is well-settled that, in the absence of consent, "a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." Papasan v. Allain, 478 U.S. 265, 276 (1986) (quotation marks and citation omitted). The Eleventh Amendment also prohibits suits against state officials where the state is the real party in interest, such that a plaintiff could not sue to have a state officer pay funds directly from the state treasury for the wrongful acts of the state. Summit Med. Assocs., P.C. v. Pryor, 180 F.3d 1326, 1336 (11th Cir. 1999). In

---

[7] Because the Court has determined that Harris did not exhaust his administrative remedies using the FDC's three-step grievance process, the Court will not address Defendants' argument regarding Harris' failure to submit a petition to initiate rulemaking.

Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986) (per curiam), the

Eleventh Circuit noted:

> It is clear that Congress did not intend to abrogate a state's eleventh amendment immunity in section 1983 damage suits. Quern v. Jordan, 440 U.S. 332, 340–45, 99 S.Ct. 1139, 1144–45, 59 L.Ed.2d 358 (1979). Furthermore, after reviewing specific provisions of the Florida statutes, we recently concluded that Florida's limited waiver of sovereign immunity was not intended to encompass section 1983 suits for damages. See Gamble,[8] 779 F.2d at 1513–20.

Accordingly, in Zatler, the court found that the Secretary of the Florida

Department of Corrections was immune from suit in his official capacity. Id.

Here, the Eleventh Amendment bars suit to the extent Harris seeks monetary

damages from Defendants in their official capacities. Therefore, Defendants'

Motion is due to be granted on that basis.

### C. Supervisory Liability

Defendants argue that Harris has failed to allege Warden Lane and

Chaplain Wood personally participated in the underlying constitutional

violations, and therefore, Harris has not pled facts sufficient to establish

supervisory liability under 42 U.S.C. § 1983. See Motion at 16. The Eleventh

Circuit has held that "[i]t is well established in this Circuit that supervisory

officials are not liable under § 1983 for the unconstitutional acts of their

---

[8] Gamble v. Fla. Dep't of Health & Rehab. Serv., 779 F.2d 1509 (11th Cir. 1986).

subordinates on the basis of respondeat superior or vicarious liability." <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1360 (11th Cir. 2003), <u>abrogated in part on other grounds by</u> <u>Randall v. Scott</u>, 610 F.3d 701 (11th Cir. 2010). To establish individual liability for supervisory conduct, a plaintiff must show "that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation." <u>Keith v. DeKalb Cnty.</u>, 749 F.3d 1034, 1047–48 (11th Cir. 2014). According to the Eleventh Circuit,

> The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. Alternatively, the causal connection may be established when a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

<u>Cottone</u>, 326 F.3d at 1360. However, "[t]he deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." <u>Hartley v. Parnell</u>, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation mark omitted).

Viewing Harris's allegations in the light most favorable to him and drawing all reasonable inferences in his favor, the Court finds that Harris has

not alleged facts sufficient to plausibly show that Warden Lane was personally involved in, or otherwise causally connected to, any alleged violation of his federal statutory or constitutional rights. Harris alleges only that Warden Lane approved his formal grievance about the denial of meals on holy days. See Complaint at 6. However, addressing one grievance, without more, does not render a supervisor liable for the underlying constitutional violation. See Jones v. Eckloff, No. 2:12-cv-375-FtM-29DNF, 2013 WL 6231181, at *4 (M.D. Fla. Dec. 2, 2013)[9] (unpublished) ("[F]iling a grievance with a supervisory person does not automatically make the supervisor liable for the allegedly unconstitutional conduct brought to light by the grievance, even when the grievance is denied." (collecting cases)).[10] Nor does Harris's grievance, by itself, establish the type of widespread abuse sufficient to put a supervisor on notice of the need to correct an alleged deprivation. Therefore, the claims against Warden Lane are due to be dismissed on this basis.

---

[9] The Court notes that although decisions of other district courts are not binding, they too may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

[10] The Eleventh Circuit has recognized circumstances in which a defendant's failure to act in response to an inmate's grievances amounts to a constitutional violation. See Goebert v. Lee Cnty., 510 F.3d 1312, 1327–29 (11th Cir. 2007) (finding that a defendant's failure to act in response to an inmate's written complaint amounted to deliberate indifference and the delay attributable to the defendant's deliberate indifference may have caused the inmate's injury). However, Harris fails to state such a claim here. Indeed, the record reflects that Warden Lane took action in response to Harris's grievance by investigating and approving it. See Doc. 1-1 at 6.

As to Chaplain Wood, Harris asserts that he is responsible for "ensur[ing] the food service staff know the dates of the High Holy Days . . . and the dietary requirements of the inmates of [the Hebrew Israelite] religion." Complaint at 6. And, he alleges that during Passover and the Feast of Unleavened Bread, he did not receive the meals that conformed with his religious dietary restrictions because Chaplain Wood failed to convey the requisite information to food service staff. See id. at 6; Doc. 1-1 at 3–8. Liberally construing Harris's allegations, the Court finds Harris has sufficiently pled a First Amendment claim regarding his failure to receive his religious meals against Chaplain Wood in his supervisory capacity. Nevertheless, because Harris presents no facts connecting Chaplain Wood to his complaints about interference with his attendance at religious services, any claim against Chaplain Wood on that basis is due to be dismissed.

### D. Qualified Immunity

Next, Defendants assert that Warden Lane and Chaplain Wood are entitled to qualified immunity. See Motion at 17–19. The Court notes that although "the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be . . . raised and considered on a motion to dismiss." St. George v. Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002). "Generally speaking, it is proper to grant a motion to dismiss on qualified immunity grounds when the 'complaint fails to allege the violation of

a clearly established constitutional right.'" <u>Corbitt v. Vickers</u>, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting <u>St. George</u>, 285 F.3d at 1337). The Eleventh Circuit has stated:

> The qualified-immunity defense reflects an effort to balance "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009). The doctrine resolves this balance by protecting government officials engaged in discretionary functions and sued in their individual capacities unless they violate "clearly established federal statutory or constitutional rights of which a reasonable person would have known." <u>Keating v. City of Miami</u>, 598 F.3d 753, 762 (11th Cir. 2010) (quotation marks and brackets omitted).
>
> As a result, qualified immunity shields from liability "all but the plainly incompetent or one who is knowingly violating the federal law." <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1194 (11th Cir. 2002). But the doctrine's protections do not extend to one who "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff]." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 815 (1982) (internal quotation marks and alteration omitted).
>
> To invoke qualified immunity, a public official must first demonstrate that he was acting within the scope of his or her discretionary authority. <u>Maddox v. Stephens</u>, 727 F.3d 1109, 1120 (11th Cir. 2013). As we have explained the term "discretionary authority," it "include[s] all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." <u>Jordan v. Doe</u>, 38 F.3d 1559, 1566 (11th

Cir. 1994) (internal quotation marks omitted). Here, it is clear that Defendant Officers satisfied this requirement, as they engaged in all of the challenged actions while on duty as police officers conducting investigative and seizure functions.

Because Defendant Officers have established that they were acting within the scope of their discretionary authority, the burden shifts to [the plaintiff] to demonstrate that qualified immunity is inappropriate. See id. To do that, [the plaintiff] must show that, when viewed in the light most favorable to him, the facts demonstrate that Defendant Officers violated [Plaintiff's] constitutional right and that that right was "clearly established . . . in light of the specific context of the case, not as a broad general proposition[,]" at the time of Defendant officers' actions. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), overruled in part on other grounds by Pearson, 555 U.S. 223, 129 S.Ct. 808. We may decide these issues in either order, but, to survive a qualified-immunity defense, [the plaintiff] must satisfy both showings. Maddox, 727 F.3d at 1120–21 (citation omitted).

Jones v. Fransen, 857 F.3d 843, 850–51 (11th Cir. 2017); see King v. Pridmore, 961 F.3d 1135, 1142 (11th Cir. 2020).

Defendants argue that Chaplain Wood is entitled to qualified immunity because "his actions were reasonable within the scope of his duties." Motion at 19. According to Defendants, "[s]taff was counseled to allow [Harris] to participate in religious services and religious food services and [Harris] was added to the list for holiday food services." Id. In response, Harris contends

that Chaplain Wood is not entitled to qualified immunity. <u>See</u> Response at 2–4.

Accepting Harris's allegations with respect to Chaplain Wood, the Court finds that Harris has alleged facts sufficient to state a plausible First Amendment claim against him. According to Harris, Chaplain Wood was responsible for advising food service staff of religious holidays and dietary requirements. Complaint at 6. However, Harris alleges that he was not provided an appropriate meal on Passover because food service staff stated, "Passover doesn't start until 15th which is the date of the Messanic [sic] Jews' Passover," not Hebrew Israelite Passover. Doc. 1-1 at 3.  And even after Chaplain Wood allegedly corrected the issue, Harris again was denied an appropriate meal  on "the last day of the feast of unleavened bread." <u>Id.</u> at 5. Because Harris has stated a plausible First Amendment claim against Chaplain Wood, the Chaplain is not entitled to qualified immunity at this stage of the litigation.[11]

---

[11] Harris's assertion that Chaplain Wood violated his federal constitutional and statutory rights when he denied Harris religious meals on holy days is the only remaining claim in this action. As such, the Court does not consider Defendants' arguments with respect to Warden Lane or Harris's claims about religious services and headgear.

### E. Compensatory Damages

Defendants assert that Harris is not entitled to compensatory damages under 42 U.S.C. § 1997e(e) because he has not alleged any physical injuries that are more than <u>de minimis</u>. <u>See</u> Motion at 19–21. At issue is 42 U.S.C. § 1997e(e), which reads:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act . . . .

42 U.S.C. § 1977e(e). To satisfy § 1997e(e), a prisoner must assert physical injury that is more than <u>de minimis</u>. However, the injury does not need to be significant. <u>See</u> <u>Thompson v. Sec'y, Fla. Dep't of Corr.</u>, 551 F. App'x 555, 557 (11th Cir. 2014) (citation omitted).

Taking Harris's allegations as true, he is not entitled to seek compensatory damages because he fails to assert any physical injury that resulted from Chaplain Wood's actions and/or omissions. <u>See generally</u> Complaint. Harris's assertions, without any allegations of physical injury resulting from Chaplain Wood's actions or omissions, fail to satisfy § 1997e(e)'s injury requirement. <u>See</u> <u>Thompson</u>, 551 F. App'x at 557 n.3. Thus, Defendants' Motion is due to be granted to the extent that the Court finds Harris's request for compensatory damages from Chaplain Wood is precluded under § 1997e(e).

### F. Punitive Damages

Defendants argue that Harris's request for punitive damages must be dismissed because punitive damages are statutorily barred in any civil action with respect to prison conditions. <u>See</u> Motion at 21–24. The Court has <u>repeatedly</u> rejected similar arguments. <u>See, e.g.</u>, <u>Walker v. Bailey</u>, No. 3:23-CV-511-MMH-MCR, 2024 WL 3520868, at *8–9 (M.D. Fla. July 24, 2024); <u>Santiago v. Walden</u>, No. 3:23-CV-741-MMH-JBT, 2024 WL 2895319, at *8–9 (M.D. Fla. June 10, 2024). For the reasons detailed in the prior decisions cited here, the Court again declines to find that Harris's request for punitive damages is statutorily barred. Defendants' Motion is due to be denied as to this issue.

### G. Declaratory and Injunctive Relief

Defendants asks the Court to dismiss Harris's request for declaratory and injunctive relief because in his Complaint, Harris does not include any specific facts indicating a current or future threat of actual injury. <u>See</u> Motion at 24–25. Harris seemingly responds that the alleged constitutional violations set forth in the Complaint continue to occur. <u>See</u> Response at 4.

"'[T]o demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future.'" <u>Worthy v. City of Phenix</u>

City, 930 F.3d 1206, 1215 (11th Cir. 2019) (emphasis omitted) (quoting Malowney v. Fed. Collection Deposit Grp., 193 F.3d 1342, 1346 (11th Cir. 1999)). "Logically, 'a prospective remedy will provide no relief for an injury that is, and likely will remain, entirely in the past.'" Church v. City of Huntsville, 30 F.3d 1332, 1337 (11th Cir. 1994) (quoting Am. Postal Workers Union v. Frank, 968 F.2d 1373, 1376 (1st Cir. 1992)). Here, Harris is still incarcerated at Suwannee CI. And in the Complaint, Harris asserts that the alleged violations continue to occur. See Complaint at 7 ("These unconstitutional actions are still taking place."). Although Harris's prayer for relief asks the Court to declare Chaplain Wood violated Harris's federal constitutional and statutory rights, the Complaint and Response show that he is seeking a prospective declaration that Chaplain Wood's conduct violates his rights. As such, Harris's claim for prospective declaratory and/or injunctive relief against Chaplain Wood is properly before the Court.

## VI. Sua Sponte Frivolity Review

The Court is obligated to conduct an independent frivolity review of Harris's claims involving the FDC. The Prison Litigation Reform Act requires the Court to dismiss a case at any time if the Court determines that the action is frivolous, malicious, fails to state a claim upon which relief can be granted or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b). State and governmental entities that are considered

"arms of the state" are not "persons" subject to monetary liability within the meaning of § 1983. <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 70 (1989). The FDC is an arm of the executive branch of state government, <u>see</u> Fla. Stat. § 20.315, and thus is not a person for purposes of § 1983 litigation, <u>see</u> <u>Gardner v. Riska</u>, 444 F. App'x 353, 355 (11th Cir. 2011) (holding that plaintiff's claim for damages against the FDC, a state agency, was frivolous because state agencies are not persons subject to monetary liability under § 1983). Therefore, the Court will dismiss Harris's claims against the FDC as frivolous pursuant to 28 U.S.C. § 1915A.

Accordingly, it is now **ORDERED:**

1.     Defendants FDC, Lane, and Wood's Motion to Dismiss (Doc. 15) is **GRANTED in part** as to Harris' (1) claim about religious headgear against all Defendants because Harris failed to exhaust his administrative remedies; (2) claims for monetary damages against all Defendants in their official capacities; (3) claim about religious services against Defendants Lane and Wood and claim about religious diet against Defendant Lane for failure to state a claim; and (4) claims for compensatory damages. Therefore, Harris's claim about religious headgear against all Defendants is **DISMISSED without prejudice** for failure to exhaust administrative remedies. Harris's claim about religious services against Defendants Lane and Wood, as well as his claim about religious diet against Defendant Lane are **DISMISSED with**

**prejudice** for failure to state a claim. In all other respects, the Motion (Doc. 15) is **DENIED.**

2.      Harris's claims against Defendant FDC are **DISMISSED** pursuant to 28 U.S.C. 1915A(b).

3.      The Clerk shall terminate FDC and Lane as Defendants in this case.

4.      **This case will proceed on Harris's claim against Defendant Wood for the denial of religious meals.** Defendant Wood shall answer the Complaint (Doc. 1) no later than **December 27, 2024**. Upon the filing of the answer, the Court, by separate Order, will set deadlines for discovery and the filing of dispositive motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 26th day of November, 2024.

*Marcia Morales Howard*

**MARCIA MORALES HOWARD**
United States District Judge

Jax-9 10/25
c:      Richard Harris, #L24755
        Counsel of record